*United States Bankruptcy Court*
*District of New Jersey*
*Clarkson S. Fisher Federal Building*
*United States Courthouse*
*402 East State Street*
*Trenton, New Jersey 08608*

*Hon. Kathryn C. Ferguson, USBJ*                                                 *(609) 989-0494*

August 11, 2011

Vera Fedoroff, Esquire
Atkinson & DeBartolo, P.C.
The Galleria, 2 Bridge Avenue
Building Two, Third Floor
PO Box 8415
Red Bank, New Jersey 07701

Jay R. Schmerler, Esquire
James G. Aaron, Esquire
Ansell, Grimm & Aaron, P.C.
1500 Lawrence Avenue
CN-7807
Ocean, New Jersey 07712

Erik D. Collazo, Esquire
Suite 101
1 AAA Drive
Robbinsville, New Jersey 08691

                                       Re:     James Gambacorto - Case No. 11-18849

                                                        Motion to Quash (Document #30)
                                                        Motion to Dismiss (Document #39)
                                                        Cross-Motion to Enforce
                                                        Subpoenas(Document #44)

                                                        Hearing Date: July 27, 2011

Dear Counsel:

        On July 27, 2011, the court took oral argument on three motions: 1) motion to dismiss case; 2) motion to quash a subpoena; and 3) cross-motion to enforce subpoena. After consideration of the written submissions and oral argument, the court will dismiss the case.

Once upon a time, the movants, Raceway Petroleum, Inc. and MDN Associates, Inc., operated a gas station at premises leased from the Debtor, James Gambacorto at 187 Riverside Avenue and Highway 35 in Red Bank, NJ. The parties have been involved in protracted litigation in the state court regarding the long-term lease and environmental issues.

The Third Circuit has held that lack of good faith in filing a Chapter 13 is sufficient cause to dismiss pursuant to § 1307(c). In re Lilley, 91 F.3d 491 (3d Cir. 1996). The Lilley court noted that "[g]ood faith is a term incapable of precise definition"; therefore, the good faith inquiry is a fact intensive determination. In re Lilley, 91 F.3d 491,496 (3d Cir. 1996)(quoting In re Love, 957 F.2d 1350,1355 (7th Cir. 1992)). The relevant factors to the totality of the circumstances inquiry may include, among others, the following:

> 1) the nature of the debt;
> 2) the timing of the petition;
> 3) how the debt arose;
> 4) the debtor's motive in filing the petition;
> 5) how the debtor's actions affected creditors;
> 6) the debtor's treatment of creditors both before and after the petition was filed; and
> 7) whether the debtor has been forthcoming with the bankruptcy court and the creditors

In re Dahlgren, 418 B.R. 852 (Bankr. D.N.J. 2009) (citing In re Lilley, 91 F.3d at 496).

The burde of proof shifts during the course of a good faith analysis. "Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith." In re Tamecki, 229 F.3d 205, 207 (3d Cir. 2000). The Third Circuit has provided additional guidance with respect to weighing the burdens and evaluating the circumstances:

> First, we noted that a finding of lack of good faith should not [be] lightly infer[red]. Second, we cautioned that dismissal should be confined carefully and utilized only in egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence.

2

Perlin v. Hitachi Capital America Corp., 497 F.3d 364, 373 (3d Cir. 2007) (internal citations omitted).

  Mindful of these considerations, the court turns to the first Lilley factor – the nature of the debt.  The Debtor's schedules list only a few creditors:  Raceway, Bank of America, NJ Economic Development Authority, Macy's, American Education Services, NJ DEP, and Thomas Wilson.  With the exception of the debt to Raceway, the debts listed do not indicate any pressing current need to seek bankruptcy protection.  The debt to Bank of America is mortgage debt and the debtor's Chapter 13 plan does not seek to address it.  It appears that the Debtor is seeking a loan modification outside of bankruptcy.  The debt to the NJ Economic Development Authority is contingent debt that the Debtor may never have to repay.  The debt to American Education Services appears to be student loan debt that is not dischargeable in a Chapter 13 absent a showing of undue hardship and the Debtor has not sought such a determination.  The debts to Macy's are minimal credit card debt and the Debtor has not claimed that he is in default on those credit cards or that any collection actions have been commenced.  As for the attorney's fees owed to Thomas Wilson, Esq., it is highly unlikely that the Debtor was under pressure to repay that debt immediately given the fact that Mr. Wilson has formed a company with the Debtor's spouse and daughter and he is renting premises from the Debtor.   The picture that emerges from the evidence presented is that this is essentially a two-party dispute between the Debtor and his former tenant and that the Debtor was motivated primarily by a desire to avoid paying the former tenant on any potential judgment.  Numerous courts have found that:  "Two-party disputes … simply have no place in bankruptcy.... Many courts have found that such filings violate the 'good faith' prerequisite to invoking the bankruptcy court's equitable jurisdiction." In re Shead,  2008

WL 1995373, 3 (S.D. Tex. 2008) (quoting In re Anderson Oaks L.P., 77 B.R. 108, 112 (Bankr. W.D. Tex. 1987)).

That conclusion ties in with the second Lilley factor – the timing of the filing. The timing of the filing of the petition in this case strongly suggests that it was to avoid payment of the debt to Raceway. Raceway had been successful on its appeal and the petition was filed just ten days after the Appellate Division awarded Raceway almost $20,000 in fees and costs alone for litigation of the appeal. It was also on the eve of the parties appearing before the trial court to determine the proper amount of attorney's fees to be awarded in the case. Not only that, the filing also stayed separate pending state court litigation involving the parties. The timing indicates that the Debtor wanted to further frustrate and delay Raceway.

The third Lilley factor is the manner in which the debt arose. The debt to Raceway is the result of highly contentious litigation involving a twenty-year lease. On that issue it is significant to note that in its ruling the state court stated that Mr. Gambacorto's credibility was significantly impaired because he altered photographs and utilized photos taken at different angles and testified that they represented different spills.

The fourth and fifth Lilley factors have already been addressed in the foregoing discussion. It appears that the motive for filing was to avoid paying Raceway rather than avoid any impending foreclosure or end collection actions. Also, the Debtor's action in filing affects Raceway because it delays other pending litigation in which Raceway seeks further damages against the Debtor. Additionally, the bankruptcy would result in Raceway being paid a mere fraction of the damages it was awarded.

The sixth Lilley factor is the Debtor's treatment of creditors before and after the filing. That factor also points in the direction of bad faith. The Debtor's initial Chapter 13 plan called

4

for the most *de minimus* of payments to creditors – only $100 month for 36 months[1]. That proposal becomes all the more troubling when the court considers the fact that the Debtor entered into a insider lease of its real property at a rate that is significantly below market and is less than half of the amount Raceway was paying. If a more competitive lease had been negotiated at arm's length, then perhaps the Debtor could propose to repay more to his creditors. As things stand, the proposed plan does not evince any genuine desire to repay creditors.

The final Lilley factor is whether the debtor has been forthcoming with the court and creditors. The answer is a resounding "no". The Debtor did not initially list in his petition the lease he entered into with his wife, daughter and state court attorney. As that lease appears to be the primary source of income for the Debtor, that is vital information that the Debtor failed to disclose properly. The Debtor did not amend Schedule G to include that lease until July 20, 2011 – four months after filing. Nor was that source of income revealed in Schedule I. Pre-petition, the Debtor failed to disclose to Raceway or the state court that he transferred his interest in his commercial property to his wife.

At oral argument, Debtor's counsel conceded that this was a two party dispute but contended that it was not bad faith because the Debtor was behind on his mortgage and had some credit card debt. *See*, Perlin v. Hitachi Capital America Corp., 497 F.3d 364, 373 (3d Cir. 2007) (the intent to avoid a single large debt is evidence of bad faith). Debtor's counsel did not state that any foreclosure action had been commenced, much less that the debtor was on the verge of a sheriff sale or that the Debtor was the subject of collections actions. None of the Debtor's submissions evidenced any pressing need for bankruptcy protection. Once a Debtor's good faith

---

[1] The Debtor's plan is confusing. In Part 5 it states that unsecured claims will be paid a *pro rata* share of $47,930. If it is assumed that sum of money would come from a refinance of the commercial property, that would still result in a very small dividend given that the filed claims total $1,541,657.16.

has been called into question, as it legitimately has in this case, it the Debtor's burden to affirmatively come forward with evidence of good faith. This Debtor has not sustained that burden. For all of the reasons stated above, the court finds that this petition was filed in bad faith.

The motion to dismiss is granted. In cases where bad faith has been established it is unnecessary to consider conversion to Chapter 7 because the good faith requirement in Chapter 13 and Chapter 7 cases is the same. In re Manfredi, 434 B.R. 356 (Bankr. M.D. Pa. 2010) (citing, In re Myers, 491 F.3d 120, 127 (3d Cir. 2007)). This ruling renders the motion to quash the subpoena to Luz Gambacorto and the cross-motion to enforce the subpoena moot. The Court will enter the standard order dismissing the case.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: August 11, 2011